UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTIAN AND MISSIONARY
ALLIANCE FOUNDATION, INC.
dba Shell Point Retirement
Community, dba Chapel Pointe
at Carlisle, THE ALLIANCE
COMMUNITY FOR RETIREMENT
LIVING, INC. dba Shell Point
Retirement Community, dba
Chapel Pointe at Carlisle,
THE ALLIANCE HOME OF
CARLISLE, PENNSYLVANIA dba
Shell Point Retirement
Community, dba Chapel Pointe
at Carlisle, TOWN AND
COUNTRY MANOR OF THE
CHRISTIAN AND MISSIONARY
ALLIANCE dba Shell Point
Retirement Community, dba
Chapel Pointe at Carlisle,
SIMPSON UNIVERSITY dba Shell
Point Retirement Community,
dba Chapel Pointe at
Carlisle, and CROWN COLLEGE
dba Shell Point Retirement
Community, dba Chapel Pointe
at Carlisle,

      Plaintiffs,

v.                              Case No: 2:14-cv-580-FtM-29CM

SYLVIA MATHEWS BURWELL, in
her official capacity as
Secretary of the Department
of Health and Human
Services, UNITED STATES
DEPARTMENT OF HEALTH AND
HUMAN SERVICES, THOMAS E.
PEREZ, in his official
capacity as the Secretary of
the United States Department
of Labor, UNITED STATES
DEPARTMENT OF LABOR, JACOB

J. LEW, in his official
capacity as Secretary of the
United States Department of
the Treasury, and THE UNITED
STATES DEPARTMENT OF THE
TREASURY,

     Defendants.

---

<u>**OPINION AND ORDER**</u>

This matter comes before the Court on Plaintiffs' Motion for
Preliminary Injunction (Doc. #20) and Plaintiffs' Request for Oral
Argument (Doc. #22), both filed on November 5, 2014. Defendants
filed an Opposition (Doc. #29) on November 19, 2014, to which
plaintiffs filed a Reply (Doc. #35) on December 18, 2014.
Defendants filed a Surreply (Doc. #37) on January 9, 2015, and
plaintiffs filed a Notice of Supplemental Authority (Doc. #40) on
January 21, 2015. The Court heard oral arguments on January 23,
2015. For the reasons stated below, the motion is granted in part
and denied in part.

**I.**

On October 3, 2014, plaintiffs Christian and Missionary
Alliance Foundation, Inc. (doing business as Shell Point
Retirement Community)(Shell Point), The Alliance Community for
Retirement Living, Inc. (Alliance Community), The Alliance Home of
Carlisle, Pennsylvania (doing business as Chapel Pointe at
Carlisle)(Chapel Pointe), Town and Country Manor of The Christian
and Missionary Alliance (Town & Country Manor), Simpson

University, and Crown College (collectively plaintiffs) filed a Complaint and Request for Injunctive Relief (Doc. #1) challenging certain regulations issued under the Patient Protection and Affordable Care Act (the Affordable Care Act, ACA, or PPACA) that require them to directly or indirectly provide insurance coverage to their employees which include abortifacient drugs, devices, or services.   Plaintiffs are either religious nonprofit retirement communities affiliated with The Christian and Missionary Alliance religious denomination (CMA) or religious nonprofit colleges and universities affiliated with CMA.   None of the plaintiffs are exempt from the ACA or its regulations.   Defendants are the Secretary of the United States Department of Health and Human Services (HHS), the Secretary of the United States Department of Labor (DOL), the Secretary of the United States Department of Treasury (Treasury), and the Treasury (collectively defendants or the United States).

In their six-count Complaint, plaintiffs assert that forced compliance with the regulations is a violation of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1 (Count One), and a violation of their rights under both the First and/or Fifth Amendments of the United States Constitution (Counts Two-Six).

(Doc. #1.)  Plaintiffs' request for a preliminary injunction is premised only on the RFRA claim.  (Doc. #20, p. 27.) [1]

## II.

The Affordable Care Act was enacted on March 23, 2010, and amended the Employee Retirement Income Security Act of 1974 (ERISA) to establish new requirements for group health plans and insurers. Among many other things, the Affordable Care Act requires employers with 50 or more full-time employees to offer employee health-care plans which provide certain additional minimum levels of coverage to plan participants and beneficiaries.  26 U.S.C. §§ 4980H(a) &(c)(2), 5000A(f)(2).  All of the plaintiff entities satisfy the minimum number of employees requirement.  (Doc. #21, p. 7 ¶ 15, p. 13, ¶ 16, p. 18, ¶ 15, p. 23, ¶ 16, p. 29, ¶ 16, p. 35, ¶ 16.) As relevant to this case, these minimum levels require providing coverage for certain "preventive care" without cost to the insured. "[W]ith respect to women," this includes "such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [HRSA]".  42 U.S.C. § 300gg-13(a)(4).

Congress did not itself specify what types of preventative care must be covered, but authorized HRSA[2], a component of HHS, to

---

[1]The page numbers refer to those created by CM/ECF at the upper right hand corner of the filed document.

[2] Health Resources and Services Administration (HRSA).

- 4 -

make that decision.  <u>Burrell v. Hobby Lobby Stores, Inc.</u>, 134 S.
Ct. 2751, 2762 (2014).   In due course HHS published final
regulations requiring that the "preventative care and services"
required by the ACA included "all [FDA] approved contraceptive
methods, sterilization procedures, and patient education and
counseling for all women with reproductive capacity" (the
Contraception Mandate). 45 C.F.R. § 147.130(a)(1)(iv).[3] Many of
these FDA approved methods, procedures, and the education violate
plaintiffs' sincerely held religious beliefs.

Noncompliance with the Contraception Mandate is punished by
steep financial penalties and other civil remedies. For example,
an organization which fails to provide the mandated coverage risks
a tax penalty of $100 per day per employee.  26 U.S.C. § 4980D(a),
(b)(1). If an employer discontinues offering a health plan
altogether, the penalty is $2,000 per year, per employee. 26 U.S.C.
§ 4980H(a), (c). In addition, noncomplying employers face
potential enforcement actions by the Secretary of Labor and plan
participants and beneficiaries under ERISA. 29 U.S.C. §§ 1132,
1185d.

Certain employers who would otherwise be subject to the
Contraception Mandate, however, are exempt from the Contraception

---

[3]Similar requirements are imposed by the Department of Labor,
29 C.F.R. § 2590.715-2713(a(1)(ii), and the Department of
Treasury, 26 C.F.R. § 54.9815-2713(a)(1)(iv). For simplicity, the
Court refers only to the HHS regulations.

Mandate.   Health plans in existence when the ACA was adopted are "grandfathered" and do not need to comply with the coverage minimums—including the contraception mandate—unless the plan sponsor makes certain changes to the terms of the plan. 42 U.S.C. § 18011. Additionally, effective July 2013, "religious employers" (i.e., formal churches and religious orders organized and operating as nonprofit entities under the Internal Revenue Code) are exempt from the Contraception Mandate.   45 C.F.R. § 147.131(a).[4]  None of the plaintiff entities fall within either of these categories.

Also effective July 2013, a non-exempt organization may obtain an "accommodation" to avoid compliance with the Contraception Mandate.   An accommodation is available to any organization meeting the following criteria:   (1) it opposes providing coverage for some or all contraceptive services required by the ACA on account of religious objections, (2) it is organized and operated as a nonprofit entity, and (3) it holds itself out as a religious organization.   45 C.F.R. § 147.131(b)(1)-(3). Further, to avail itself of this accommodation, the organization must self-certify that it meets the three criteria. 45 C.F.R. § 147.131(b)(4).   The Supreme Court has stated that this

---

[4]At oral argument, counsel for plaintiffs suggested for the first time that labor unions were also exempted.   No support for this assertion has been provided.

accommodation "effectively exempted" such organizations from the contraceptive mandate. <u>Hobby Lobby</u>, 134 S. Ct. at 2763.

The ACA regulation originally required that self-certification be "in a form and manner specified by the Secretary." 45 C.F.R. § 147.131(b)(4). Self-certification involved the employer filling out the "EBSA Form 700—Certification." 45 C.F.R. § 147.131(b)(4). In this short form, the employer certifies that, on account of religious objections, the organization opposes providing coverage for some or all of any contraceptive services that would otherwise be required to be covered; the organization is organized and operates as a nonprofit entity; and the organization holds itself out as a religious organization. <u>Id.</u> <u>See also</u> EBSA Form 700. The form also provided that "the organization or its plan must provide a copy of this certification to the plan's health insurance issuer (for insured health plans) or a third party administrator (for self-insured health plans) in order for the plan to be accommodated with respect to the contraceptive coverage requirement." EBSA Form 700.

Where there is an accommodation, the ACA requires insurers/third party administrators to pay for the contraceptive coverage for the organizations which are accommodated. 45 C.F.R. §§ 147.131(c)(2)(i)(B) & (ii); 29 C.F.R. § 2590.715–2713A(b)(3). Form 700 thus alerts the insurers/third party administrators that the employer is not going to pay, and therefore they will have to

pay.  When an insurer receives notice that one of its clients has invoked an accommodation, the issuer must then exclude contraceptive coverage from the employer's plan and provide separate payments for contraceptive services for plan participants without imposing any cost-sharing requirements on the eligible organization, its insurance plan, or its employee beneficiaries. 45 C.F.R. § 147.131(c).  For a self-insured religious organizations choosing to invoke an accommodation, the third-party administrator of the organization must "provide or arrange payments for contraceptive services" for the organization's employees without imposing any cost-sharing requirements on the eligible organization, its insurance plan, or its employee beneficiaries. 26 CFR § 54.9815–2713A(b)(2).

Despite the regulation's required use of a proscribed form, the Supreme Court has dispensed with that requirement in connection with the issuance of a preliminary injunction.  On January 24, 2014, <u>Little Sisters of the Poor Home For The Aged, Denver v. Colo v. Sebelius</u>, 134 S. Ct. 1022 (2014), stated:

> If the employer applicants inform the Secretary of Health and Human Services in writing that they are non-profit organizations that hold themselves out as religious and have religious objections to providing coverage for contraceptive services, the respondents are enjoined from enforcing against the applicants the challenged provisions of the Patient Protection and Affordable Care Act and related regulations pending final disposition of the appeal by the United States Court of Appeals

> for the Tenth Circuit. To meet the condition
> for injunction pending appeal, applicants need
> not use the form prescribed by the Government
> and need not send copies to third-party
> administrators.

Similarly, in Wheaton College v. Burwell, 134 S. Ct. 2806 (2014),

the Court stated:

> If the applicant informs the Secretary of
> Health and Human Services in writing that it
> is a non-profit organization that holds itself
> out as religious and has religious objections
> to providing coverage for contraceptive
> services, the respondents are enjoined from
> enforcing against the applicant the challenged
> provisions of the Patient Protection and
> Affordable Care Act and related regulations
> pending final disposition of appellate review.
> To meet the condition for injunction pending
> appeal, the applicant need not use the form
> prescribed by the Government, EBSA Form 700,
> and need not send copies to health insurance
> issuers or third-party administrators.

Id. at 2807.

In light of Wheaton College, on August 27, 2014, HHS provided

an alternative notice mechanism to the EBSA Form 700 for invoking

the accommodation. Coverage of Certain Preventative Services

Under the Affordable Care Act, 79 Fed. Reg. 51092-01 (Aug. 27,

2014). This allows an entity seeking an accommodation to notify

only the HHS of its decision, not its insurer or administrator.

The organization is not required to use any particular form, but

the organization is required to set forth the basis for its

eligibility, the type of plan, and the contact information for the

insurer/administrator. 45 C.F.R. § 147.131(c)(1)(ii). If the

notice is sent only to the government agency, the government will make necessary communications with the insurers/administrators to arrange for the coverage required by the ACA.   Id.

### III.

Plaintiffs assert that their sincerely held religious beliefs preclude them from complying with the Contraception Mandate or participating in the accommodation process.   Plaintiffs seek a preliminary injunction to enjoin enforcement of the Contraception Mandate and its regulations, including the accommodation process. Plaintiffs also seek to enjoin the imposition of any fine, penalty, or tax for failing to provide such coverage or to seek an accommodation.   As noted earlier, the basis for injunctive relief is solely the RFRA.

A federal court has inherent authority to issue an injunction to remedy a violation of statutory or constitutional rights.   Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004). "The purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held."   Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011)(citation omitted).   However, "injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."   Winter v. NRDC, Inc., 555 U.S. 7, 22 (2008)(citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)(per curiam)).   As the Eleventh Circuit has

similarly stated, "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes 'the burden of persuasion' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)(en banc) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).

The four elements which must be established by the party seeking an injunction have been phrased slightly differently. The Supreme Court has held that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20 (citations omitted). In comparison, the traditional statement in the Eleventh Circuit is that in order to obtain a preliminary injunction, the movant must demonstrate "(1) a **substantial** likelihood of success on the merits of the underlying case, (2) the movant will **[likely]** suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is issued, and (4) an injunction would not disserve the public interest." Odebrecht Constr. v. Sec'y, Fla. DOT, 715 F.3d 1268, 1273-74 (11th Cir. 2013)(emphasis added)(citations omitted). At oral argument both sides agreed

that there is not a material difference in the requirements, despite the different verbiage.  The Court also agrees.

## A. Substantial Likelihood of Success on the Merits

Plaintiffs assert that they are likely to succeed on the merits because enforcement of the Contraception Mandate and the accommodation process violates the RFRA.  (Doc. #20, pp. 28-34.) The Court agrees in part.

"Congress enacted RFRA . . . in order to provide very broad protection for religious liberty." Hobby Lobby Stores, Inc., 134 S. Ct. at 2760. The statute provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).  Plaintiffs bear the burden of showing that the Government has substantially burdened their exercise of religion. Davila v. Gladden, No. 13-10739, ___ F.3d ___, 2015 WL 127364, at *3 (11th Cir. Jan. 9, 2015).   If plaintiffs show that the government's action substantially burdens a person's exercise of religion, the government must "demonstrate[ ] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." § 2000bb-1(b).

### (1)  Exercise of Religion

To violate the RFRA, the government must impose a substantial burden of the exercise of religion.  Gonzales v. O Centro Espirita

Beneficente  Uniao  do  Vegetal, 546 U.S. 418, 428 (2006).
Plaintiffs assert that the exercise of religion in this case is
their refusal to provide insurance coverage for those
contraceptives that may harm or kill a fertilized egg, or to
transfer authority to a third party to do the same. (Doc. #20,
p. 29.)  The Court agrees that plaintiffs have established that
this constitutes an exercise of religion.

### (2)  Sincerely Held Religious Beliefs

The government does not dispute that the beliefs of all
plaintiffs about their exercise of religion are sincerely held.
The Court agrees.  It is not for the Court to say that plaintiffs'
religious beliefs are mistaken or insubstantial, but only "whether
the line drawn [between conduct that is and is not permitted under
one's religion] reflects an honest conviction."  Hobby Lobby
Stores, Inc., 134 S. Ct. at 2779.  The Court finds, for purposes
of the preliminary injunction only, that plaintiffs honestly
believe that complying with the Contraception Mandate and
participating in the accommodation process would violate their
religious beliefs and principles.

### (3)  Substantial Burden on Exercise of Religion

The Court must determine whether plaintiffs' exercise of
religion – i.e., refusing to provide the type of insurance coverage
at issue – was substantially burdened by the Contraception Mandate
and/or the accommodation process of the ACA.  Plaintiffs' exercise

of their religious beliefs is "substantially burdened" "if the regulation requires participation in an activity prohibited by religion." Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004).  This requires something more than an incidental effect or inconvenience. Davila, 2015 WL 127364, at *4.  Rather, "the governmental action must significantly hamper one's religious practice." Smith v. Allen, 502 F.3d 1255, 1277 (11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 131 S. Ct. 1651 (2011). See also Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004) ("[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs.").  As the Supreme Court stated, a court looks to "whether the HHS imposes a substantial burden on the ability of the objecting parties to conduct business in accordance with their religious beliefs." Hobby Lobby Stores, Inc., 134 S. Ct. at 2778.

The Court finds that compliance with the Contraception Mandate does impose a substantial burden on plaintiffs' religious exercise.  The government, through the Contraception Mandate, requires plaintiffs to provide a type of health care insurance coverage to employees which their sincerely held religious beliefs firmly prohibit.  Substantial penalties may be assessed by the government for non-compliance.  As in Hobby Lobby Stores, Inc.,

134 S. Ct. at 2775, the Court has little trouble in concluding that the Contraception Mandate does impose a substantial burden on plaintiffs' exercise of religion.

The government, however, provides what appears at first blush to be a simple and expedient way for plaintiffs to opt-out of the offending obligations imposed by the Contraception Mandate. Plaintiffs argue, however, that the accommodation process is itself a substantial burden on their exercise of religion.  This is a separate and distinct question from the impact of the Contraception Mandate, and the answer is not as simple.

The Court finds that the portion of the accommodation process which requires plaintiffs to self-certify their eligibility for the accommodation and provide that written self-certification to the HHS does not substantially burden plaintiffs' exercise of religion.  This notice requirement is short, simple, and merely obligates the organization to certify that it meets the eligibility requirements for the accommodation.  None of the elements for eligibility for the accommodation invade privacy; indeed, plaintiffs proudly tell the world of their religious beliefs, but decline to agree to tell the HHS that they satisfy the three basic eligibility requirements.  This notification need not be on a government-issued form.

While the Court finds that notice to the HHS does not substantially burden plaintiffs' exercise of religion, the Court

reaches the opposite conclusion as to the portion of the government form which requires identification of and the contact information for plaintiffs' insurance carrier and/or third party administrator. As discussed earlier, when plaintiffs invoke the accommodation, their female employees will still be eligible for the contraceptive coverage, but coverage will not be paid for by plaintiffs. Compelling plaintiffs to identify their providers or administrators to the HHS clearly facilitates the government's ability to implement contraceptive coverage for plaintiffs' female employees. While plaintiffs cannot preclude the government from such implementation, the identification requirement compels plaintiffs to become excessively entangled in the process of providing coverage for services which their sincerely held religious beliefs prohibit. This is not to say that the government cannot take any legitimate steps to determine the identity of the insurers and administrators, or that the non-party insurers and administrators cannot take any steps they feel are required. After all, plaintiffs have no ability to compel the government or their insurers/administrators to follow their religious beliefs. But for the purpose of determining whether a requirement imposes a substantial burden on religious exercise, the Court draws the line after notification of eligibility but before compelled identification of an insurer/administrator.

The Court need not get drawn into the "trigger" argument discussed in some cases.  Several courts have found that the submission of the self-certification form does not "trigger" contraceptive coverage, but rather it is federal law that requires the coverage and triggered the obligation.  Univ. of Notre Dame v. Sebelius, 743 F.3d 547, 553-557 (7th Cir. 2014), petition for cert. filed, No. 14-392 (Oct. 3, 2014); Michigan Catholic Conference & Catholic Family Servs. v. Burwell, 755 F.3d 372, 387 (6th Cir. 2014), petition for cert. filed, No. 14-701 (Dec. 12, 2014); Priests For Life v. United States HHS, 772 F.3d 229, 252 (D.C. Cir. 2014).  A concurring Eleventh Circuit opinion, which pre-dated the final rule allowing an alternative form of notice, found this position to be "Rubbish."  Eternal Word Television Network, Inc. v. Sec'y, United States HHS, 756 F.3d 1339, 1347 (11th Cir. 2014) ("Even if the form alone does not "trigger" coverage —whatever that means—it is undeniable that the United States has compelled the Network to participate in the mandate scheme by requiring the Network not only to sign but also to deliver the form to its third-party administrator of its health insurance plan.")  Whatever the trigger for coverage, plaintiffs must provide notice of eligibility to the HHS but need not provide identifying information as to the insurers/administrators.

As other courts have done, the Court will therefore precondition the preliminary injunction upon plaintiffs'

notification to the HHS of their eligibility for the accommodation. Nothing precludes the government from using that information, and any other information it may legitimately obtain, to enforce compliance with the law.  Notice need not be on a government form and a copy need not be provided to the insurer/administrator.

    **(4)   Compelling Governmental Interest**

    Once a plaintiffs show that their exercise of religion is substantially burdened, the Government must demonstrate that its challenged actions are in furtherance of a compelling governmental interest.  <u>Davila</u>, 2015 WL 127364, at *4.  In evaluating whether particular policies are in furtherance of a compelling governmental interest, courts should "look[ ] beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants." <u>Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal</u>, 546 U.S. 418, 431 (2006).

    The United States argues that it has a compelling government interest "in safeguarding public health and ensuring that women have equal access to health care."  Coverage of Certain Preventive Services Under the Affordable Care Act, 78 Fed. Reg. 39870-01, 39872 (July 2, 2013).  The Court finds this is a compelling governmental interest under the facts and circumstances of this particular case.  <u>See, e.g.</u>, <u>Hobby Lobby Stores, Inc.</u>, 134 S. Ct.

at 2780. The Court rejects plaintiffs' argument that the existence of multiple exemptions demonstrates that the government interest is not compelling. The government need not remedy a problem in one fell swoop in order for its interest to be compelling.

### (5)   Least Restrictive Means

Even if the government has shown a compelling governmental interest justifying the burden on plaintiffs' religious exercise, it must show that the regulations are the least restrictive means for furthering that interest. "The least-restrictive-means standard is exceptionally demanding." Hobby Lobby Stores, Inc., 134 S. Ct. at 2780. Although "cost may be an important factor in the least-restrictive-means analysis, but [ ] RFRA [ ] may in some circumstances require the Government to expend additional funds to accommodate citizens' religious beliefs." Id. at 2781.

The Court finds that for preliminary injunction purposes the government has not established that the Contraceptive Mandate and current notice requirements are the least restrictive means available to achieve its compelling interest. However, the Court further finds that the self-certification notice requirement, as limited above, is the least restrictive means available. Accordingly, while the notice requirement is proper, the identification of insurer/administrator requirement is not.

**B. Irreparable Harm or Injury**

"A showing of irreparable injury is the *sine qua non* of injunctive relief." Siegel, 234 F.3d at 1176 (citation omitted). "[I]t is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." KH Outdoor, LLC v. Trussville, 458 F.3d 1261, 1271-72 (11th Cir. 2006)(quotation marks and citation omitted). The Court rejects the government's argument that plaintiffs have unduly delayed the filing of their Complaint, which is indicative that they have and will not suffer irreparable harm or injury. The Court finds no undue delay, and in any event, the delay in this case is simply not indicative of a lack of irreparable harm to plaintiffs. Plaintiffs have established the existence of an irreparable injury.

**C. Balancing Harms and Public Interest**

Plaintiffs must also establish that the threatened injury to them outweighs the harm a preliminary injunction may cause to the defendant and that an injunction would not harm or do a disservice to the public interest. Siegel, 234 F.3d at 1176. The preliminary injunction the Court will issue will impose at least inconvenience to the government in the bureaucratic implementation of the ACA. Determining the identity of the insurer/administrator will undoubtedly be more difficult if plaintiffs are not compelled to provide this information. On the other hand, "even a temporary

infringement of First Amendment rights constitutes a serious and substantial injury," and neither the government nor the public have any legitimate interest in enforcing an unconstitutional statute or regulation.  KH Outdoor, 458 F.3d at 1272.  The Court finds that both factors favor issuance of a preliminary injunction.

**D. Bond**

Rule 65(c) of the Federal Rules of Civil Procedure provides that a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c). "[B]efore a court may issue a preliminary injunction, a bond must be posted, but it is well-established that "the amount of security required by the rule is a matter within the discretion of the trial court and the court may elect to require no security at all." BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC, 425 F.3d 964, 971 (11th Cir. 2005) (citations omitted).  The Court directs that any plaintiff complying with the pre-condition for this preliminary injunction post a $100 bond with the Clerk of the Court.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiffs' Request for Oral Argument (Doc. #22) is **GRANTED** and oral arguments were conducted on January 23, 2015.

2. Plaintiffs' Motion for Preliminary Injunction (Doc. #20) is **GRANTED IN PART AND DENIED IN PART** as follows:

    (i)    If a plaintiff informs the Secretary of Health and Human Services in writing that it (1) opposes providing coverage for some or all contraceptive services required by the ACA on account of religious objections, (2) is organized and operated as a nonprofit entity, and (3) holds itself out as a religious organization, defendants are enjoined from enforcing against that plaintiff challenged provisions of the Patient Protection and Affordable Care Act and related regulations. To meet the condition for this preliminary injunction, a plaintiff need not use the form prescribed by the Government and need not identify or send copies to its insurer/third-party administrator.

    (ii)    Bond of $100 must be posted with the Clerk of the Court by each plaintiff who qualifies for the preliminary injunction.

    (iii)    Nothing in this Opinion and Order precludes the Government or its agencies from relaying any accommodation notice or taking other lawful steps to facilitate implementation of full contraceptive coverage under the ACA.

(iv)    Nothing in this Opinion and Order directs non-party insurers/administrators to do or refrain from doing anything.

3. The parties shall comply with the deadlines set forth in the December 19, 2014 Order (Doc. #36) for responding to the Complaint and for the filing of a Case Management Report.

**DONE and ORDERED** at Fort Myers, Florida, this ___3rd___ day of February, 2015.

_____

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record